IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ECOLAB, INC., *et al.*, | : | Case No. 1:22-cv-197 |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| v. | : | |
| DOUGLAS P. GLANZ, *et al.*, | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant ChemTreat, Inc.'s Motion to Dismiss (Doc. 14) and Defendant Douglas P. Glanz's Motion to Dismiss (Doc. 15). Plaintiffs filed a joint response in opposition to each motion (Doc. 16), to which Defendants filed separate replies (Docs. 18, 19). Thus, this matter is ripe for review. For the reasons below, Defendant ChemTreat, Inc.'s Motion to Dismiss (Doc. 14) is **GRANTED IN PART AND DENIED IN PART** and Defendant Douglas P. Glanz's Motion to Dismiss (Doc. 15) is **DENIED**.

## FACTS

Plaintiffs Ecolab Inc. ("Ecolab") and Nalco Company, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water ("Nalco") are corporations engaged in the business of "monitoring and controlling performance of industrial water treatment systems for clients in a wide range of industries" throughout the United States. (Compl., Doc. 1, ¶¶ 11, 12.) In 2011, Nalco merged with Ecolab and became a wholly owned subsidiary of

Ecolab. (*Id.* at ¶¶ 11, 19.) Plaintiffs are registered to do business and regularly conduct business in Ohio and maintain an office in Cincinnati, Ohio. (*Id.* at ¶¶ 2-3.)

From 2007 to 2021, Plaintiffs employed Defendant Douglas P. Glanz. (Compl., Doc. 1, ¶¶ 18, 20.) Glanz is a resident of Ohio and is allegedly an "industry expert for . . . water membrane filtration." (*Id.* at ¶¶ 6, 24.) Glanz's most recent position with Plaintiffs was as a "Senior Industry Technical Consultant." (*Id.* at ¶ 20.) As a Senior Industry Technical Consultant, Glanz worked with Plaintiffs' sales personnel and customers throughout the country. (*Id.* at ¶¶ 22-23.) Specifically, Glanz was responsible for solving complex issues and "recommending the best water process technology to customers." (*Id.*) Additionally, as a Senior Industry Technical Consultant, Glanz had substantial access to Plaintiffs' confidential and trade secret information related to Plaintiffs' customers, products, and services. (*Id.* at ¶¶ 24-25.)

"[T]o protect [Plaintiffs'] confidential and trade secret information," Plaintiffs required Glanz to sign a Management Employment Agreement ("Agreement"). (Compl., Doc. 1, ¶¶ 14, 26.) Glanz "entered into and performed under the Agreement in Ohio." (*Id.* at ¶ 8.) Section 9 of the Agreement contained multiple restrictive covenants. (*Id.* at ¶ 28-32.) Two of the restrictive covenants are relevant here. First, pursuant to Section 9(a) of the Agreement:

> Employee will not within the Restricted Territory . . . render services to a Conflicting Organization . . . in any role or position that is the same or substantially similar to any position Employee held at the Company in the eighteen (18) month period immediately preceding Employee's cessation of employment with the Company;

(*Id.* at ¶ 28.) Additionally, pursuant to Section 9(d):

2

>   Employee will not within the Restricted Territory provide services to a Conflicting Organization in any position in which any reliance on the use or disclosure of the Company's Confidential Information to which Employee was exposed during the last eighteen (18) months of Employee's employment with the Company would inevitably support or facilitate the performance of Employee's duties for a Conflicting Organization;

(*Id.*)

>   "Restricted Territory" is defined as "any of the following severable territories:"
>
>   (i)   United States.
>
>   (ii)  Any state in the United States in which the Company shipped products or provided services at any time during the eighteen (18) months immediately preceding Employee's cessation of employment with the Company.
>
>   (iii) Any county, province, or parish or any substantially similar territorial unit in which Employee provided services or products on behalf of the Company during the eighteen (18) month period preceding the termination of Employee's employment with the Company.

(*Id.* at ¶ 29.)

"Conflicting Organization" is defined as "any person or organization (including one owned in whole or in part by Employee) which is engaged in or is about to become engaged in the research on, or the development, production, marketing or sale of, or consulting pertaining to, a Conflicting Product or Service." (Compl., Doc. 1, ¶ 30.) "Conflicting Product or Service" is defined as:

>   [A]ny product or process of, or service by, any person or organization other than Company, in existence or under development, which is the same as or similar to or improves upon or competes with a product or process of, or service rendered by, Company which Employee either worked on, performed or sold during Employee's last eighteen (18) months of their employment by Company.

3

(*Id.* at ¶ 31.)

In April 2021, Glanz resigned from his position with Plaintiffs and became employed by Defendant ChemTreat, Inc. ("ChemTreat") as a "Senior Technical Consultant—Pretreatment." (Compl., Doc. 1, ¶ 34.) Plaintiffs allege that ChemTreat is "a direct competitor of [Plaintiffs] in the industrial water treatment marketplace" because ChemTreat "markets, provides, and sells products, processes, and services to its customers that are the same or are similar to those which [Plaintiffs] provide to their customers." (*Id.* at ¶¶ 37, 39.)

Plaintiffs filed their Complaint against Defendants on April 11, 2022. (*See* Doc. 1.) In the Complaint, Plaintiffs bring a breach of contract claim against Glanz and a tortious interference with contractual relationships claim against ChemTreat. (*Id.* at ¶¶ 38-62.) Defendants now bring separate motions to dismiss Plaintiffs' claims. (*See* Docs. 14, 15.)

## LAW

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. R. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Courts are not bound to do the same for a complaint's legal conclusions. *Id.* at 555.

Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility warrants dismissal. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Glanz, by fully incorporating the arguments contained within ChemTreat's motion, seeks to dismiss Plaintiffs' breach of contract claim against him, arguing that (1) the restrictive covenants contained in the Agreement are impermissibly overbroad and (2) Plaintiffs failed to adequately plead damages. (*See* Glanz Motion to Dismiss, Doc. 15.) ChemTreat seeks to dismiss Plaintiffs' tortious interference claim against it, arguing that (1) it is preempted by the Ohio Uniform Trade Secrets Act ("OUTSA"), (2) the restrictive covenants contained in the Agreement are impermissibly overbroad, and (3) Plaintiffs failed to plead damages. (*See* ChemTreat Motion to Dismiss, Doc. 14.) The Court will address each argument in turn.

### I. Breach of Contract Claim Against Glanz

As an initial matter, the Agreement presented to the Court does not contain a choice of law provision. (*See* Ex. A, Doc. 1, Pg. ID 17-21.)[1] In a diversity action, a district court must apply the choice of law rules of the state in which it sits. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992). Ohio choice of law rules mandate that

---

[1] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto." *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

5

the law of the state with the most significant relationship to the contract should govern disputes arising from it. *Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568 (Ohio 1986). In determining the most significant relationship, Ohio has adopted the test set forth in the Restatement (Second) of Conflict of Laws § 188, which includes consideration of: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the contract subject matter; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *N. River Ins. Co. v. Emplrs. Reinsurance Corp.*, 197 F. Supp. 2d 972, 979 (S.D. Ohio 2002) (citing *Watts*, 963 F.2d at 150).

Based on the allegations presented in the Complaint, Ohio has the most significant relationship to the Agreement. Plaintiffs are "registered to do business and regularly conduct[] business in the state of Ohio" and maintain an office in Ohio, as well. (Compl., Doc. 1, ¶¶ 2-3.) Additionally, Glanz is allegedly a resident of Ohio. (*Id.* at ¶ 6.) Further, Glanz "entered into and performed under the Agreement in Ohio." (*Id.* at ¶ 8.) Thus, Ohio has the most significant relationship to the Agreement and the Court will apply Ohio law in its analysis of it.

To succeed on a breach of contract claim under Ohio law, a plaintiff must show that (1) a valid, enforceable contract existed; (2) plaintiff performed; (3) defendant breached; and (4) plaintiff suffered damages as a result of the breach. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). Glanz argues that Plaintiff cannot satisfy the first and fourth elements of a breach of contract claim. (*See* Glanz Motion to Dismiss, Doc. 15.)

### A. Enforceability of the Agreement

Glanz first argues that the restrictive covenants that he allegedly breached are overbroad and, therefore, unenforceable. (Glanz Motion to Dismiss, Doc. 15, Pg. ID 95.) Plaintiffs allege that Glanz breached the Agreement "by becoming and continuing to remain employed by ChemTreat, a direct competitor of [Plaintiffs], in positions and geographic regions where his knowledge of [Plaintiffs'] confidential and trade secret information would support or facilitate performance of his duties at ChemTreat." (Compl., Doc. 1, ¶ 47.) These allegations implicate Sections 9(a) and 9(d) of the Agreement, as they are restrictive covenants that constrain what Glanz's employment with a competitor of Plaintiffs may be. (*Id.* at ¶ 28.) Glanz argues that these restrictions are unenforceable as a matter of law. (Motion to Dismiss, Doc. 15, Pg. ID 95.)

Under Ohio law, "only reasonable noncompetition agreements are enforceable." *Lake Land Emp't Grp. Of Akron, LLC v. Columber*, 804 N.E.2d 27, 33 (Ohio 2004). "Whether a noncompete covenant is reasonable is a question of law." *Firstenergy Solutions Corp. v. Flerick*, 521 Fed. Appx. 521, 526 (6th Cir. 2013). However, "[i]n determining whether restrictive covenants should be enforced, the facts of each case are paramount." *Rotex Global, LLC v. CPI Wirecloth & Screens, Inc.*, No. 1:16-cv-244, 2016 U.S. Dist. LEXIS 24540, at *13 (S.D. Ohio Feb. 29, 2016) (citations omitted). The Court "may consider numerous factors, such as the absence or presence of time and space limitations, whether the bound party is possessed with confidential information or trade secrets, whether the covenant seeks to eliminate unfair competition versus ordinary competition; and whether the covenant seeks to stifle the inherent skill and experience of the bound party." *Id.*

7

This matter is solely at the pleading stage. Without the benefit of discovery, "the Court does not have the information necessary to adequately assess the factors to determine whether the restrictions are reasonable." *Rotex Global, LLC*, 2016 U.S. Dist. LEXIS 24540, at *13. The Court declines to determine the enforceability of the restrictive covenants until the parties have had sufficient opportunity to develop a factual record.

### B. Damages

Glanz next argues that Plaintiffs failed to adequately plead damages resulting from Glanz's alleged breach. (Glanz Motion to Dismiss, Doc. 15, Pg. ID 95.) Damages for a breach of contract claim "are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach that were within the contemplation of both parties at the time of the making of the contract." *Nako v. Consolidated Packaging Grp.*, No. 1:17-cv-843, 2018 U.S. Dist. LEXIS 238632, at *7-8 (S.D. Ohio June 26, 2018) (quoting *The Toledo Group, Inc. v. Benton Industrs., Inc.*, 623 N.E.2d 205, 211 (Ohio Ct. App. 1993)). The "failure to allege cognizable damages compels the dismissal of [a] complaint." *Id.* (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 704 (6th Cir. 2005)). Thus, "[e]ven if damages are often not required to be pled with specificity or in detail[,] the standards articulated in *Twombly* and *Iqbal*[] require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp v. Canadian Standards Assoc.*, No. 1:17-cv-1127, 2018 U.S. Dist. LEXIS 105907, at *10 (N.D. Ohio June 25, 2018).

Here, Plaintiffs have adequately pled damages. Glanz's alleged breach caused Plaintiffs to experience a "loss of business" in the form of a loss of customer goodwill and

relationships, as well as a loss of "competitive standing and goodwill in the marketplace." (Compl., Doc. 1, ¶¶ 48-49.) Additionally, Plaintiffs maintain that they may be damaged by Glanz's potential use of Plaintiffs' confidential information with Plaintiffs' competitor. (*Id.* at ¶ 50.) Although Plaintiffs do not specify the extent of their alleged damages, Plaintiffs have nonetheless adequately identified "some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp.*, 2018 U.S. Dist. LEXIS 105907, at *10. Thus, Plaintiffs adequately pled damages to their breach of contract claim against Glanz. *See Prof'l Investigating & Consulting Agency v. SOS Sec., LLC*, No. 2:19-cv-3304, 2020 U.S. Dist. LEXIS 5919, at *15 (S.D. Ohio Jan. 14, 2020) (citing *Iqbal*, 556 U.S. at 678) (general damages to plaintiff's business through defendant's alleged breach was sufficient to show damages).

Therefore, in construing the allegations in a light most favorable to Plaintiffs, the Court finds that Plaintiffs alleged sufficient facts to support a plausible claim for relief for breach of contract against Glanz.

## II. Tortious Interference with Contractual Relationships Claim Against ChemTreat

The Court turns now to Plaintiffs' tortious interference with contractual relationships claim against ChemTreat. Again, in a diversity action, a district court must apply the choice of law rules of the state in which it sits. *Watts*, 963 F.2d at 150. Under Ohio law, in order to recover for a claim of tortious interference with a contractual relationship, "one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's

9

breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). As noted above, ChemTreat argues that (1) Plaintiffs' claim is preempted by the OUTSA, (2) the underlying contract related to the claim is unenforceable, and (3) damages to this claim were not adequately plead. (*See* ChemTreat Motion to Dismiss, Doc. 14.)

### A. Preemption

ChemTreat first argues that Plaintiffs' tortious interference claim should be dismissed because it is preempted by the OUTSA. (ChemTreat Motion to Dismiss, Doc. 14, Pg. ID 77.) The OUTSA preempts conflicting "torts, restitutionary, and other laws" that provide "civil remedies for misappropriation of a trade secret." Ohio Rev. Code. § 1333.67(A). The Sixth Circuit has applied a broad interpretation of the OUTSA's preemption provision, finding that it "should be understood to preempt not only causes of action for misappropriation of trade secrets but also causes of action that are based *in some way* on misappropriation of trade secrets." *Stolle v. Mach Co., LLC v. Ram Precision Indus.*, 605 Fed. App. 473, 484 (6th Cir. 2015) (emphasis added). This preemption extends to all claims based on misappropriation regardless of whether the information ultimately rises to the level of a "trade secret." *Id.* That is to say, the OUTSA preempts causes of action based on allegations related to confidential information, even if that information is ultimately not deemed a trade secret. *Id.*

"The test to determine whether a state law claim is displaced by [the] OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that form[] the basis of the plaintiff's statutory claim for trade secret misappropriation."

10

*Stolle*, 605 Fed. Appx. at 485 (quotation omitted). "Where the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, 'the portion of the claim supported by an independent factual basis survives preemption.'" *Id.* (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012)).

As an initial matter, Plaintiffs maintain that the Court's consideration of preemption at this stage is premature. (Response in Opposition, Doc. 16, Pg. ID 110.) However, one of the cases Plaintiffs rely on, *Exal Corp. v. Roeslein & Assocs., Inc.*, discusses the "varying and inconsistent holdings" courts have reached when analyzing this issue. No. 4:12-cv-01830, 2012 U.S. Dist. LEXIS 143917, at *2 (N.D. Ohio Oct. 2, 2012). Regardless of these differing opinions, all of these "cases have one point of consensus: [i]f the common law cause of action is drawn entirely from trade secret allegations, with no additional facts to support the claim, the common law count is subject to preemption." *Id.* (citation omitted). Moreover, there is ample caselaw that supports the Court's decision to rule on preemption on a motion to dismiss. *See, e.g., Miami Valley*, 852 F. Supp. 2d at 941; *Cincom Sys. v. Labware, Inc.*, No. 1:20-cv-83, 2021 U.S. Dist. LEXIS 31945, at *14-15 (S.D. Ohio Feb. 22, 2021); *Novus Grp., LLC v. Prudential Fin., Inc.*, No. 2:19-cv-208, 2019 U.S. Dist. LEXIS 161270, at *10 (S.D. Ohio Sept. 17, 2019). Thus, the Court may properly consider whether Plaintiffs' tortious interference claim is preempted by the OUTSA.

Next, the Court must address Plaintiffs' argument that, since they did not bring forward a misappropriation or OUTSA claim, then the OUTSA cannot preempt their tortious interference claim because there is nothing to compare the factual basis on.

11

(Response in Opposition, Doc. 16, Pg. ID 112). However, as articulated by ChemTreat, "OUTSA preemption would be a wholly toothless doctrine if, as Plaintiffs argue, it could be evaded through the simple expedient of not pleading a claim under the OUTSA." (Reply in Support, Doc. 19, Pg. ID 173.) The OUTSA's preemption provision is "intended to prevent inconsistent theories of relief for the same underlying harm," *Rogers Indus. Prods. v. HF Rubber Mach. Inc.*, and would be enforceable regardless of whether an OUTSA claim was plead in Plaintiffs' Complaint. 188 Ohio App. 3d 570, 580 (Ohio Ct. App. 2010). To determine preemption where, as here, a plaintiff has not pled an OUTSA or misappropriation claim, the Court considers whether the tortious interference claim raised factual issues that are independent of the defendant's "alleged misappropriation and misuse of [the plaintiff's] confidential and proprietary information." *Id.* at 581.

Plaintiffs alleged that ChemTreat intentionally interfered with Plaintiffs' contractual relationship with Glanz by soliciting his employment and, in turn, causing Glanz to materially breach his contractual obligations owed to Plaintiffs. (Compl., Doc. 1, ¶¶ 56-57.) As a result of ChemTreat's alleged interference, Plaintiffs experienced damages in the form of "loss of [their] exclusive use of confidential business information that provides [Plaintiffs] with a competitive advantage." (*Id.* at ¶ 59.) Again, Section 9(a) and 9(d) of the Agreement are implicated here.

As it applies to Section 9(a) of the Agreement, Plaintiffs' tortious interference claim is not predicated on Defendants' alleged misappropriation of Plaintiffs' trade secrets. Central to Plaintiffs' tortious interference claim is whether Glanz breached the Agreement. *Keller N. Am., Inc. v. Earl*, No. 1:20-cv-2401, 2021 U.S. Dist. LEXIS 159201, at

*17-18 (N.D. Ohio Aug. 24, 2001). Glanz would breach Section 9(a) by becoming employed by a competitor of Plaintiffs in a position similar to a Senior Industry Technical Consultant. In turn, Plaintiffs' tortious interference claim, as applied to Section 9(a), centers on Glanz's specific type of employment and employer—a question of fact separate from the misappropriation of trade secrets. Though damages to this claim relate to the misappropriation of confidential information, a "portion of the claim [is] supported by an independent factual basis." *Stolle*, 605 Fed. Appx. at 485. Thus, Plaintiffs' tortious interference claim, as applied to Section 9(a), is not preempted.

In contrast, as it applies to Section 9(d) of the Agreement, Plaintiffs' tortious interference claim is predicated on Defendants alleged misappropriation of Plaintiffs' trade secrets. Given his contractual obligations outlined above, Glanz would breach Section 9(d) by improperly disclosing Plaintiffs' confidential information to ChemTreat. In turn, the core of Plaintiffs' claim, as it applies to Section 9(d), is whether ChemTreat and Glanz misappropriated confidential information, which would be the operative facts at the heart of an OUTSA claim. *Campfield v. Safelite Grp., Inc.*, No. 2:15-cv-2733, 2021 U.S. Dist. LEXIS 62070, at *40-41 (S.D. Ohio Mar. 31, 2021). These allegations are "based entirely upon the allegation that . . . [D]efendants disclosed confidential business information." *Greif, Inc. v. MacDonald*, No. 3:06-cv-312-H, 2007 U.S. Dist. LEXIS 14617, at *2 (W.D. Ky. Mar. 1, 2007). Consequently, as it applies to Section 9(d), the OUTSA preempts Plaintiffs' claim for tortious interference.

Plaintiffs maintain that, if the Court determines that OUTSA preemption applies, they are nevertheless permitted to plead the preempted claim "in the alternative."

(Response in Opposition, Doc. 16, Pg. ID 114.) This Court has rejected the argument that parties may alternatively plead state law claims that are based entirely upon the alleged misappropriation of trade secrets. *See, e.g., Miami Valley*, 825 F. Supp. 2d at 941 (S.D. Ohio 2012); *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-cv-2845, 2016 U.S. Dist. LEXIS 79199, at *11 (S.D. Ohio June 17, 2016). Courts have reasoned that "[i]t would be incongruent to hold that these [common law] claims are preempted [by the OUTSA] yet allow them to be pleaded in the alternative." *Murray Energy*, 2016 U.S. Dist. LEXIS 79199, at *11. Thus, Plaintiffs may not proceed "in the alternative" on their tortious interference claim, as it applies to Section 9(d), against ChemTreat.

Therefore, Plaintiffs' tortious interference claim against ChemTreat, as it applies to Section 9(a) of the Agreement, is not preempted by the OUTSA. In contrast, Plaintiffs' tortious interference claim, as it applies to Section 9(d) of the Agreement, is preempted.

### B. Enforceability of the Agreement

ChemTreat next argues that Plaintiffs' tortious interference claim may not proceed because the restrictive covenants that ChemTreat allegedly interfered with are overbroad and, consequently, unenforceable. (ChemTreat Motion to Dismiss, Doc. 14, Pg. ID 80-87.) However, as detailed above, the Court declines to consider the enforceability of Section 9(a) and 9(d) of the Agreement at this juncture. Thus, at this stage, this argument fails.

### C. Damages

Finally, ChemTreat argues that the damages alleged in Plaintiffs' tortious interference claim are insufficiently pled. (ChemTreat Motion to Dismiss, Doc. 14, Pg. ID 87-89.) As noted, "[e]ven if damages are often not required to be pled with specificity or

14

in detail[,] the standards articulated in *Twombly and Iqbal*[] require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp*, 2018 U.S. Dist. LEXIS 105907, at *10.

ChemTreat maintains that Plaintiffs failed to plead damages with enough specificity, though the standard relied on by ChemTreat is not required at this stage of litigation. ChemTreat argues that "Plaintiffs do not identify a single customer improperly solicited, a single contract lost due to unfair competition, or a single instance suggestive of the illicit use of Plaintiffs' confidential or trade secret information." (Motion to Dismiss, Doc. 14, Pg. ID 88.) In support of its argument, ChemTreat cites to cases wherein the irreparable harm requirement for injunctive relief was not met when a plaintiff failed to provide specific evidence of harm. (*Id.*) However, the Court is not considering a motion for preliminary injunction. At this juncture, Plaintiffs are not required to prove irreparable harm. The question presented to the Court is whether Plaintiffs have sufficiently plead damages to survive a motion to dismiss. And Defendants fail to cite to any caselaw that suggests such specificity of damages in a tortious interference claim is necessary at this stage.

Here, Plaintiffs have sufficiently pled damages to their tortious interference claim to survive a motion to dismiss. As a result of ChemTreat's alleged interference, Plaintiffs' experience damages in the form of "loss of [their] exclusive use of confidential business information that provides [Plaintiffs] with a competitive advantage." (Compl., Doc. 1, ¶ 59.) Again, although Plaintiffs do not specify the extent of their alleged damages, they have nonetheless adequately identified "some factual basis upon which the existence of

15

damages can be plausibly inferred." *Duro Corp.*, 2018 U.S. Dist. LEXIS 105907, at *10. Thus, Plaintiffs have adequately pled damages to their tortious interference claim against ChemTreat.

Therefore, Plaintiffs tortious interference claim, as it applies to Section 9(a) of the Agreement, may proceed.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Defendant ChemTreat, Inc.'s Motion to Dismiss (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' tortious interference with contractual relationships claim against ChemTreat is **DISMISSED** as it pertains to Section 9(d) of the Agreement, as it is predicated on Defendants alleged misappropriation of Plaintiffs' trade secrets and is, therefore, preempted by the OUTSA. Plaintiffs **MAY PROCEED** on their tortious interference with contractual relationships claim against ChemTreat solely as it pertains to Section 9(a) of the Agreement.

(2) Defendant Douglas P. Glanz's Motion to Dismiss (Doc. 15) is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND

16